## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN

| | |
|---|---|
| DANIEL ANDRADE, SR. and ELIZABETH M. ANDRADE, individually and as the representative of a class of similarly-situated persons,       ) ) ) ) ) | |
| Plaintiff,       ) | No. 18-cv-19 |
| )         | |
| v.       ) | **CLASS ACTION** |
| )         | |
| COMPASS BANK d/b/a BBVA COMPASS and TAHERZADEH, PLLC,       ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant.       ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, DANIEL ANDRADE, SR. and ELIZABETH M. ANDRADE (collectively, "Plaintiffs") bring this action on behalf of themselves and all other persons similarly situated and, except for those allegations pertaining to Plaintiffs or their attorneys, which are based upon personal knowledge, allege the following upon information and belief against Defendants COMPASS BANK d/b/a BBVA COMPASS ("BBVA") and TAHERZADEH, PLLC ("Taherzadeh") (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

### Defendant BBVA

1.      Plaintiffs seek class-wide relief against BBVA for breach of contract and violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and its implementing Regulation Z (12 C.F.R. Part 226).

2. BBVA improperly charged an increased "default" interest rate of 18% on the subject home equity line of credit loan.

3. BBVA could only charge an increased interest rate <u>after</u> default and termination and acceleration of the loan.

4. BBVA could only charge an increased interest rate <u>after</u> prior notice.

5. Plaintiffs are now seeking actual and statutory damages against BBVA for breach of contract and violations of TILA on behalf of themselves and a class of all persons who were charged an increased default rate of interest prior to default and termination and acceleration, and without proper notice.

6. Plaintiffs also seek individual relief against BBVA for negligent misrepresentation, and under the Real Estate Settlement Procedures Act ("RESPA") for BBVA's failure to acknowledge receipt of Plaintiffs' Qualified Written Request ("QWR") within five days.

**Defendant Taherzadeh**

7. Defendant Taherzadeh is a law firm that represents BBVA in foreclosure and other collection lawsuits, including a foreclosure action filed against Plaintiffs on the subject loan.

8. Plaintiffs seek class and individual relief against Taherzadeh for violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692.

9. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. The FDCPA

requires that debt collectors give debtors certain information. *See, e.g.*, 15 U.S.C. §§ 1692e and 1692g.

10.     The FDCPA requires that debt collectors disclose in the initial communication with consumers "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and identify "in subsequent communications that the communication is from a debt collector…." 15 U.S.C. § 1692e(11).

11.     Taherzadeh sent debt collection notices to Plaintiffs and other class members that contained language that materially contradicted and overshadowed the disclosure and debt validation requirements of the FDCPA.

12.     Plaintiffs are seeking class relief of actual and statutory damages against Taherzadeh for violations of § 1692e(11) of up to the lesser of $500,000 or 1% of Taherzadeh's net worth for FDCPA violations and all other relief the Court deems appropriate under the circumstances.

13.     The FDCPA also requires that a debt collector send debtors a validation notice containing certain mandatory disclosures within five days of the initial communication. 15 U.S.C.A. § 1692g(a).

14.     Taherzadeh failed to send Plaintiffs a § 1692g(a) validation notice within five days of its initial communication.

15.     Plaintiffs are seeking individual relief for actual and statutory damages against Taherzadeh for violations of § 1692g(a) of up to $1,000, and all other relief the Court deems appropriate under the circumstances.

16.     The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); *Young v. Asset Acceptance, LLC, Civil Action*, No.:3:09-CV-2477-BH, 2011 WL 618274, at *2 (N.D. Tex. 2011).

17.     Plaintiffs seek to enforce those policies and civil rights which are expressed through the FDCPA.

## JURISDICTION

18.     Jurisdiction is proper under 28 U.S.C. § 1346(b)(1), 28 U.S.C. § 1331, and 15 U.S.C. § 1692k (FDCPA), 15 U.S.C. § 1640(e) (TILA), and 12 U.S.C. § 2614 (RESPA). The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1402(b) and 28 U.S.C. § 1391(b) as the Plaintiffs reside in this district and this is a class action in which a substantial part of the acts and omissions giving rise to the claims occurred within Texas and this judicial district.

## PARTIES

20.     Plaintiffs Daniel Andrade, Sr. and Elizabeth M. Andrade are natural persons and residents of Austin, Texas.

21.     Defendant Compass Bank d/b/a BBVA Compass, is an Alabama banking corporation, with its principal place of business at 401 West Valley Avenue,

Homewood, Alabama 35209, and its registered agent located at 15 South 20th St. Suite 1802 Birmingham, Alabama 35233.

22. Defendant Taherzadeh, PLLC, is a Texas-based debt collection law firm, with its principal place of business at 5001 Spring Valley Road, Suite 1020W, Dallas, Texas, 75244.

## FACTS

### HELOC Agreement with BBVA

23. On January 12, 2008, Plaintiffs executed a home equity line of credit agreement in favor of BBVA with a credit limit of $103,800.00 and a fixed interest rate of 3.5%, secured by a second mortgage lien on their primary residence.

24. The credit agreement consisted of an "Equity Optimizer Credit Agreement and Disclosure," Exhibit A, representing the debt agreement ("credit agreement"), and a "Homestead Lien Contract and Deed of Trust," Exhibit B, representing the mortgage lien and deed of trust agreement (hereinafter Exhibit A and B collectively referred to as "subject loan").

25. After accrual of a credit balance, the credit agreement required a minimum monthly payment of the interest on the loan each month.

26. The "minimum payment" was equal to the amount of the accrued finance charges or $75.00, whichever is greater. Exhibit A at "Minimum Payment."

27. Under the credit agreement, payments were due on the date provided in each periodic statement. Exhibit A at "Periodic Statements."

28.     Payments received by BBVA on a business day would be credited as of the date they were received. Id. at "Receipt of Payments."

29.     A late fee was only imposed if a payment was made 10 days after the due date shown on the periodic statement. Id. at "Conditions Under Which Late Charges May Be Imposed," "Late Charge."

30.     Under the subject loan, BBVA could increase the interest rate to a "default rate" of 18% for a failure to meet repayment terms and after termination and acceleration of the credit agreement. Id. at "Lender's Rights," "Rate Increase," and "Rate Increase Upon Default;" Exhibit B at "Events of Default."

31.     Under the subject loan, a borrower would be notified of change in loan terms and interest rate increase before the new payment amount. Exhibit A at "Lender's Rights, Rate Increase & Rate Increase Upon Default," "Periodic Statements & Notices"; Exhibit B at "Rights and Remedies on Default," "Accelerate Indebtedness."

**BBVA's Conduct in Relation to Plaintiffs**

32.     Plaintiffs have lived in the property for 21 years and raised their family there.

33.     Since the origination of the loan in 2008, Plaintiffs have been loyal customers of BBVA and made regular monthly payments on the subject loan.

34.     Plaintiffs normally paid a minimum payment each month to cover the interest on the subject loan at 3.5%.

35.     In August 2012, Plaintiff Elizabeth "Beth" Andrade was diagnosed with multiple myeloma, a form of bone marrow cancer, a treatable, but incurable cancer.

36.     Mrs. Andrade underwent months of treatment, and a bone marrow transplant in January 2013. Since then, Mrs. Andrade has undergone years of post-treatments, including pain therapy, constant use of medication, and regular x-rays. She continues to undergo chemotherapy treatment every three months.

37.     Throughout Mrs. Andrade's cancer treatment, Plaintiffs accumulated medical bills that placed financial strain on their family.

38.     Mrs. Andrade was undergoing post-treatments for cancer when BBVA first notified her that she was at risk of making a late payment on the subject loan.

**November 2016 through December 2017**

39.     During the life of the loan, Plaintiffs diligently made the minimum payment of $296.51 each month to BBVA.

40.     Plaintiffs' payments were normally due on the 12th of every month, or the date set forth in the periodic statement.

41.     In November 2016, Plaintiffs received a statement that they owed a $296.51 minimum payment due December 12, 2016, and their interest rate was 3.5%.

42.     As Mrs. Andrade was undergoing medical treatment, Plaintiff did not make their payment by the December 12, 2016 due date.

43.     In December 2016, Plaintiffs received a statement that they owed a $296.51 minimum payment due January 9, 2017, and their interest rate was 3.5%.

44.     On Wednesday, January 11, 2017, Plaintiffs received a call from a BBVA representative advising them to pay their bill by Friday, January 13, 2017 to avoid a late fee. The BBVA representative did not specify an amount due over the phone.

45.     Plaintiffs paid the minimum payment of $296.51 online that same evening on January 11, 2017 from their bank account. Plaintiffs' bank account is also with BBVA and their payment was applied directly from Plaintiffs' bank account to their mortgage account.

46.     BBVA received Plaintiffs' payment no later than the next morning on Thursday, January 12, 2017. Plaintiffs made their payment as advised by January 13, 2017, but BBVA did not apply the payment until the following Tuesday, January 17, 2017.

47.     Later that month, Plaintiffs received a statement that they owed a minimum payment amount of $1,524.91, past due balance of $593.02, an over limit balance of $1,278.42, due February 9, 2017, and their interest rate was increased to 18%.

48.     Believing that they still owed the minimum payment amount at 3.5%, Plaintiffs paid BBVA $296.91 on February 6, 2017.

49.     In February 2017, Plaintiffs received a statement that they now owed the minimum payment of $296.51, in addition to a past due balance of $1,524.91, due March 13, 2017. Their interest rate was dropped back down to 3.5%.

50.     On February 28, 2017, Plaintiffs paid $296.51.

51.     In March 2017, Plaintiffs received a statement that they owed a minimum payment amount of $1,524.91, past due balance of $1,524.91, and an over limit balance of $2,240.12, due April 10, 2017. Their interest rate again increased to 18%.

52.     Confused by the HELOC statement, and believing that they still owed the minimum payment amount at 3.5%, on April 11, 2017, Plaintiffs paid BBVA $296.91.

53.     When Plaintiffs spoke with a BBVA representative about the rate and payment increase, BBVA notified Plaintiffs that their loan was in default because the payment received in January was paid late. Due to the late payment in January 2017, the Plaintiffs' interest rate increased to the "default rate" of 18%.

54.     The BBVA representative told Plaintiffs that they must pay $1,228.40 at the 18% interest rate or their credit would be affected.

55.     Apart from the periodic statements, Plaintiffs did not receive prior notice of a change in loan terms, interest rate increase, or minimum payment increase.

9

56.     Under duress and based upon the misrepresentations of BBVA, on April 27, 2017, Plaintiffs made the higher $1,228.40 payment at the 18% interest rate so that their credit score would not be damaged.

57.     The following month, BBVA advised Plaintiffs that the increase to an 18% interest rate was in error.

58.     Plaintiffs requested to have the overpayment returned to them or applied to their April, May, June, July, and August payments.

59.     Instead of returning or reimbursing the overpayment, BBVA applied the overage to the principal balance on the loan and continued to deem the loan in default.

60.     The April 2017 overpayment was not owed and should have been returned directly to Plaintiffs as opposed to applied to the principal balance. It was not a "pre-payment" under the loan, but an erroneous "overpayment" that BBVA was required to return or reimburse to the Plaintiffs.

61.     Despite BBVA's assurances that the rate hike was in error, BBVA continued to charge an increased interest rate of 18% and minimum payment amount of $1,524.91 for the May 2017 payment.

62.     Plaintiffs continued to make the 3.5% interest payment of $296.51.

63.     Inexplicably, BBVA reduced Plaintiffs' payment amount back down to $296.51 at an interest rate of 3.5% for the June 2017 payment.

64.     Then, again, without warning or prior notice, BBVA increased Plaintiffs' minimum payment amount to $1,524.91 at 18% for the July and August 2017 payments.

65.     After charging the higher rate for July and August, BBVA reduced Plaintiffs' minimum payment to $75.00 at an interest rate of .29167% for the September, October, November, and December 2017 payments.

66.     BBVA did <u>not</u> send Plaintiffs' any notice of a change in terms, or payment or interest rate increase prior to increasing Plaintiffs' interest rate to 18% or decreasing the interest rate back down to 3.5% or .29167%.[1]

**Plaintiffs' RESPA QWR**

67.     In response to BBVA's servicing errors and arbitrary interest rate hikes, on November 28, 2017, Plaintiffs sent a RESPA QWR to BBVA disputing BBVA's application of their January 2017 payment as late, interest rate increase, and BBVA's failure to return their April 2017 overpayment.

68.     BBVA received Plaintiffs' QWR on December 4, 2017.

69.     BBVA did not acknowledge Plaintiffs' QWR within five days of receipt.

70.     One day after Plaintiffs sent their QWR to BBVA, the law firm Taherzadeh, filed an application for foreclosure of the subject loan on behalf of BBVA in the District Court for the 250th Judicial Circuit, Travis County.

---

[1] This accounting was inexplicable because Plaintiffs had accrued a full credit balance. The "minimum payment" was equal to the amount of the accrued finance charges or $75.00, whichever is greater. <u>Exhibit A</u> at "Minimum Payment."

71.     BBVA's foreclosure claimed that Plaintiffs had been in default since May 17, 2017 and owed six payments for a past-due amount of $5,776.14, and full amount due of $108,900.99.

**Damages**

72.     Plaintiffs suffered anxiety from BBVA's arbitrary interest rate increase, payment amount increase, and foreclosure filing on the subject loan.

73.     BBVA's collection efforts and foreclosure placed additional stress on Mrs. Andrade when she needed to focus on her health and cancer treatment.

74.     Plaintiffs attempted to pay the higher payment amount at 18% under duress, but BBVA continued to charge the increased interest rate and payment amount without authorization under the contract.

75.     Plaintiffs lost amounts that they paid to BBVA that were improperly charged and applied to the subject loan.

76.     Plaintiffs suffered actual damages by the conduct of BBVA. Plaintiffs lost the time and postage that it took to correspond with BBVA and send their QWR for information on the loan.

77.     Plaintiffs suffered additional damages in the form of added fees and costs, and attorney fees for defending the foreclosure and bringing the present action.

**Taherzadeh's Collection Notices**

78.     On October 11, 2017 and November 13, 2017, respectively, Taherzadeh

sent notices of default and intent to accelerate to Plaintiffs. Exhibit C and D.

79.     Exhibits C and D were the first two communications from Taherzadeh.

They are nearly identical letters that contain the following language:

> **LEGAL PRECEDENT IS NOT CLEAR AS TO WHETHER THE SENDING OF THIS LETTER MAKES US A DEBT COLLECTOR. TO THE EXTENT IT DOES,** PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.

Exhibits C and D (emphasis in bold).

80.     The first sentence of each notice, "Legal precedent is not clear as to

whether the sending of this letter makes us a debt collector," is not required by the

FDCPA.

81.     Taherzadeh is a debt collector and must identify itself as a debt

collector in its initial communication or subsequent communications to borrowers.

82.     Under the FDCPA, the sending of a collection letter does not impact

Taherzadeh's status as a "debt collector," and that disclosure was unnecessary.

83.     The language that Taherzadeh added to Exhibits C and D

overshadowed Taherzadeh's disclosure of itself as a debt collector.

84.     Plaintiffs were confused by the added language and were unsure

whether Taherzadeh was a debt collector subject to the FDCPA.

85.     After Taherzadeh sent its initial communication to Plaintiffs on October 11, 2017, Exhibit C, it sent the nearly identical letter on November 13, 2017, Exhibit D.

86.     Exhibits C and D did not contain an FDCPA debt validation notice identifying Plaintiffs' right to dispute the debt within 30 days.

87.     Taherzadeh also did not provide the required debt validation notice to Plaintiffs within five days of its initial communication notifying Plaintiffs of their right to dispute the debt within 30 days.

## COUNT I -- CLASS ACTION
### BREACH OF CONTRACT
### (Against BBVA for Plaintiffs and the Class)

88.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

89.     Plaintiffs performed and tendered the amounts due under the credit agreement.

90.     BBVA breached the credit agreement by failing to properly credit Plaintiffs' payments on the date that they were received.

91.     BBVA breached the credit agreement by charging Plaintiffs a "default" interest rate of 18% prior to Plaintiffs' default on the subject loan.

92.     BBVA breached the credit agreement by charging a "default" interest rate of 18% prior to termination and acceleration of the subject loan.

93.     BBVA breached the credit agreement by refusing to return the full amount of Plaintiffs' overpayment, even though the amount was charged in error.

14

94.    BBVA charged an increased "default" interest rate without authorization under the contract.

95.    BBVA further demanded and charged additional fees that were not authorized.

96.    BBVA refused to accurately communicate to Plaintiffs in good faith about the interest rate increase, improper payment application, and treatment of Plaintiffs' payments.

97.    Plaintiffs suffered damages in the form of lost payments, termination and acceleration of the subject loan, a foreclosure filing, and mental anguish and anxiety.

98.    Plaintiffs were forced to hire attorneys, incur out-of-pocket expenses, and be subjected to a foreclosure after BBVA's wrongful servicing of the subject loan and breach of the credit agreement.

## CLASS ALLEGATIONS

99.    Plaintiffs brings this COUNT I against BBVA on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

100.    The Contract Breach class is defined as:

> All persons (a) with a Texas address, (b) with a home equity line of credit ("HELOC") serviced by BBVA, (c) who were charged an increased "default" annual percentage rate ("APR") to 18% or other default rate of interest  prior to termination and acceleration of the credit line account, (d) within the four years preceding the date of this complaint.

Plaintiffs anticipate the possibility of modifying the proposed class definitions, including proposing subclasses where appropriate, after discovery about the scope

and breadth of BBVA's debt collection program and will do so through either an amended complaint, a motion for class certification pursuant to Fed. R. Civ. P. 23, or both.

101.    Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of their officers or legal representatives, and any Judge assigned to this action, including any immediate family members.

102.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

**Numerosity/impracticality of joinder.**

103.    On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from BBVA's records or the records of third parties.

**Commonality and predominance.**

104.    There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which

do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a. Whether BBVA has a common policy of charging a default rate of interest prior to default on the subject loan;

b. Whether BBVA has a common policy of charging a default rate of interest prior to termination and acceleration of the subject loan;

c. Whether the Court should award damages to Plaintiffs and the other class members.

<u>Typicality of claims.</u>

105.    Plaintiffs' claims against BBVA are typical of the claims of the other class members, because Plaintiffs and all class members were injured by the same wrongful practices. BBVA had a policy of increasing the interest rate in manner not permitted by the credit agreement. Under the facts of this case, because the focus is upon BBVA's conduct, if Plaintiffs prevail on their claims, then the other putative class members will prevail as well.

<u>Adequacy of representation.</u>

106.    Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class they seeks to represent. Plaintiffs, victims of unscrupulous debt collection practices, are committed to the vigorous prosecution of this action, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

### Prosecution of separate claims would yield inconsistent results.

107.   Even though the questions of fact and law in this action are predominantly common to Plaintiffs and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for BBVA to operate under if/when class members bring additional lawsuits concerning the same conduct under the contract and collection efforts.

### A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.

108.   A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the class would be proper. Plaintiffs envision no difficulty in the management of this action as a class action.

109.   BBVA is liable to Plaintiffs and the other class members for actual damages from breach of contract.

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.   Determining that this action is a proper class action under Fed. R. Civ. P. 23;

B.   Certifying Plaintiffs as class representatives;

C.   Appointing Plaintiffs' counsel as class counsel;

D.   Adjudging and declaring that Defendant BBVA breached the contract;

F.   Awarding members of the proposed class actual damages;

G.   Awarding Plaintiffs, and members of the proposed class, injunctive and declaratory relief;

H.   Awarding Plaintiffs and members of the proposed class, reasonable attorneys' fees and costs incurred in this action;

I.   Awarding Plaintiffs, and members of the proposed class, any pre-judgment and post-judgment interest as may be allowed under the law; and

J.   Awarding other and further relief as this Court may deem just and proper.

## COUNT II -- CLASS ACTION
### VIOLATION OF THE TRUTH IN LENDING ACT
### Regulation Z, 12 C.F.R. §§ 226.5 and 226.9(c)
### (Against BBVA for Plaintiffs and the Class)

110.   Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

111.   BBVA failed to provide proper notice that it was amending the terms of the credit agreement, increasing the interest rate, and increasing the minimum payment due on the subject loan.

112.   Plaintiffs did not prior notice of the increased interest rate or increased minimum payment.

113.   Plaintiffs did not receive notice of the increased interest rate or increased minimum payment at least 15 days in advance as required by Regulation Z of the Truth in Lending Act.

114.   Home-equity plans are subject to the requirements of Regulation Z, 12 C.F.R. § 226.5b. Whenever any term required to be disclosed under § 226.6(a) is changed or the required minimum periodic payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected.

115.   BBVA violated 12 C.F.R. § 226.9(c) by failing to provide proper notice that BBVA was increasing the interest rate and minimum payment due.

116.   According to 12 C.F.R. § 226.9(c)(1)(i):

Written notice required. For home-equity plans subject to the requirements of § 226.5b, whenever any term required to be disclosed under § 226.6(a) is changed or the required minimum periodic payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected. The notice shall be mailed or delivered at least 15 days prior to the effective date of the change. The 15–day timing requirement does not apply if the change has been agreed to by the consumer; the notice shall be given, however, before the effective date of the change.

117.   Plaintiffs' HELOC and the home-equity plans of other class members are subject to the requirements of § 226.5b because they are open-ended credit plans secured by the consumer's principal dwelling.

118.   A rate increase or minimum payment increase is a required disclosure under § 226.6(a).

119.   The Official Staff Commentary to Regulation Z states that advance notice of 15 days is only <u>not</u> required "[i]f there is an increased periodic rate or any

other finance charge attributable to the consumer's delinquency or default," and "[i]f the consumer agrees to the particular change," but this does not include the "consumer's general acceptance of the creditors contract reservation of the right to change terms," or "the consumer's use of the account." 12 C.F.R. pt. 226, Supp. I, § 226.9(c)(1)(i), cmt. (3)(i)-(ii).

120.    In either event, the notice shall be given before the effective date of the change. 12 C.F.R. 226.9(c)(1)(i).

121.    BBVA violated 12 C.F.R. § 226.5(c) by misrepresenting that Plaintiffs could be charged a higher, "default" interest rate of 18% without prior notice.

122.    BBVA violated 12 C.F.R. § 226.5(c) by charging a higher rate of interest or minimum payment amount without prior notice.

123.    BBVA violated 12 C.F.R. § 226.5(c) by charging a higher rate of interest or minimum payment without at least 15-days advance notice.

124.    BBVA violated 12 C.F.R. § 226.5b(f)(3) by adversely changing the terms of the credit agreement after origination without consent.

## CLASS ALLEGATIONS

125.    Plaintiffs bring this COUNT II against BBVA on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

126.    The TILA class is defined as:

> All persons (a) with a Texas address, (b) who were charged an increased loan interest rate or increase minimum payment amount on a home equity line of credit secured by their principal dwelling and serviced by BBVA, (c) without prior notice of a change in terms, (d) sent 15 days before the effective dates of the change, (e) within the one year preceding the date of this complaint.

Plaintiffs anticipate the possibility of modifying the proposed class definitions, including proposing subclasses where appropriate, after discovery about the scope and breadth of BBVA's debt collection program and will do so through either an amended complaint, a motion for class certification pursuant to Fed. R. Civ. P. 23, or both.

127.    Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of their officers or legal representatives, and any Judge assigned to this action, including his or their immediate family.

128.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

### Numerosity/impracticality of joinder.

129.    On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from BBVA's records or the records of third parties.

**Commonality and predominance.**

130.    There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.  Whether BBVA has a common policy of charging a higher rate of interest or minimum payment amount on a home equity line of credit without prior notice of a change in terms;

b.  Whether BBVA has a common policy of charging a higher rate of interest or minimum payment amount on a home equity line of credit without sending a notice 15 days prior to the effective date of the change; and

c.  Whether the Court should award damages to Plaintiffs and the other class members.

**Typicality of claims.**

131.    Plaintiffs' claims against BBVA are typical of the claims of the other class members, because Plaintiffs and all class members were injured by the same wrongful practices. BBVA had a policy of increasing the interest rate or minium payment amount in manner not permitted by the credit agreement. Under the facts of this case, because the focus is upon BBVA's conduct, if Plaintiffs prevail on their claims, then the other putative class members will prevail as well.

**Adequacy of representation.**

132.   Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class they seek to represent. Plaintiffs, victims of unscrupulous debt collection practices, are committed to the vigorous prosecution of this action, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

**Prosecution of separate claims would yield inconsistent results.**

133.   Even though the questions of fact and law in this action are predominantly common to Plaintiffs and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for BBVA to operate under if/when class members bring additional lawsuits concerning the same conduct under the contract and collection efforts.

**A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.**

134.   A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiffs know of

no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the class would be proper. Plaintiffs envision no difficulty in the management of this action as a class action.

135.    BBVA is liable to Plaintiffs and the other class members for actual damages and statutory damages of up to the lesser of $1,000,000 or 1% of the net worth of BBVA. 15 U.S.C. § 1640(a)(2)(B).

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.    Determining that this action is a proper class action under Fed. R. Civ. P. 23;

B.    Certifying Plaintiffs as class representatives;

C.    Appointing Plaintiffs' counsel as class counsel;

D.    Adjudging and declaring that Defendant BBVA violated the Truth in Lending Act;

F.    Awarding members of the proposed class actual and statutory damages, if any;

G.    Awarding Plaintiffs, and members of the proposed class, injunctive and declaratory relief;

H.    Awarding Plaintiffs and members of the proposed class, reasonable attorneys' fees and costs incurred in this action;

I.    Awarding Plaintiffs, and members of the proposed class, any pre-judgment and post-judgment interest as may be allowed under the law; and

J.    Awarding other and further relief as this Court may deem just and proper.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### (Against BBVA for Plaintiffs only)

136.   Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

137.   BBVA made representations in the course of their loan servicing business and in a transaction in which they have a pecuniary interest by misapplying Plaintiffs' payments and imposing a drastic interest rate increase without advance notice of a change in loan terms.

138.   BBVA provided false information to Plaintiffs regarding the date that their January 2017 payment was received and the reason for increasing Plaintiffs' interest rate and minimum payment amount.

139.   BBVA provided false information to Plaintiffs regarding BBVA's treatment of the April 2017 payment and intent to return the overpayment to Plaintiffs directly.

140.   BBVA did not exercise reasonable care or competence in obtaining or communicating information about the timeliness of Plaintiffs' payments, the reason for the interest rate increase, or how Plaintiffs' overpayment would be applied.

141.   Plaintiffs suffered pecuniary loss by justifiably relying on BBVA's representations regarding the status of their payments, reasons for the interest rate increase, return of Plaintiffs' overpayment, or treatment of the loan as in default.

26

142.   BBVA repeatedly misled Plaintiffs with false information regarding the status of their loan and payments, and Plaintiffs relied on these representations to their detriment.

143.   As a result, Plaintiffs had to hire attorneys, suffered mental anguish and other damages, including out-of-pocket expenses, lost amounts paid toward the higher interest rate, and experienced a foreclosure filing.

144.   BBVA is liable to Plaintiffs for actual and punitive damages for negligent misrepresentation.

WHEREFORE, Plaintiffs, individually, pray for relief and judgment as follows:

A.   That the Court enter judgment in their favor and against BBVA;

B.   That the Court award Plaintiffs actual damages in an amount to be determined at trial;

C.   That the Court award attorney's fees;

D.   That the Court award costs of suit;

E.   That the Court enjoin BBVA from further collection on the loan;

F.   That the Court award any other relief this Honorable Court deems equitable and just; and

G.   That the Court award costs and such further relief as the Court may deem just and proper.

<u>COUNT IV</u>
**REAL ESTATE SETTLEMENT PROCEDURES ACT**
Violation of 12 U.S.C. § 2605
<u>(Against BBVA for Plaintiffs only)</u>

145.   Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

146.   The subject loan is a "federally related mortgage" under RESPA and 12 C.F.R. 1024.2.

147.   BBVA qualifies as a "servicer" under RESPA § 2605(i)(2) and 12 C.F.R. 1024.2.

**A.**   <u>Violation of § 2605(e)(1)(A)</u>

148.   RESPA § 2605(e)(1)(A); 12 C.F.R. 1024.35(d) require a loan servicer to acknowledge in writing receipt of any QWR from a borrower within five days.

149.   After receipt of Plaintiffs' November 28, 2017 QWR, BBVA did not acknowledge receipt or respond in any fashion, in violation of RESPA § 2605(e)(1)(A); 12 C.F.R. 1024.35(d).

150.   BBVA's failure to comply with RESPA is part of a pattern or practice of non-compliance with the provisions of RESPA.

151.   Plaintiffs suffered damages proximately caused by BBVA's conduct, including not knowing whether BBVA had received their QWR and whether BBVA was planning to review the account and respond.

WHEREFORE, Plaintiffs, individually, pray for relief and judgment as follows:

A.   That the Court enter judgment in their favor and against BBVA;

B.   That the Court award Plaintiffs actual damages and additional damages pursuant to RESPA § 2605(f);

C.   That the Court award attorney's fees;

D.   That the Court award costs of suit;

E.   That the Court enjoin BBVA from further collection on the loan;

F.   That the Court award any other relief this Honorable Court deems equitable and just; and

G.   That the Court award costs and such further relief as the Court may deem just and proper.

**COUNT V -- CLASS ACTION**
**FAIR DEBT COLLECTION PRACTICES ACT**
**Violation of 15 U.S.C. § 1692e(11)**
**(Against Taherzadeh for Plaintiffs and the Class)**

152.   Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

153.   Plaintiffs are "consumers" as defined in the FDCPA. 15 U.S.C. § 1692a(3).

154.   The subject loan qualifies as a "debt" as that term is defined by the FDCPA.

**Taherzadeh is a Debt Collector**

155.   Taherzadeh seeks to collect defaulted debt on behalf of third-party creditors and debt owners, including BBVA. 15 U.S.C. § 1692a(6) (defining "Debt Collector").

156.    The principal purpose of Taherzadeh's business is the collection of debts, and Taherzadeh is a "debt collector" as defined by 15 U.S.C. § 1692(a)(5).

157.    Taherzadeh qualifies as a "debt collector" under § 1692a(6) because (a) it regularly collects debts and uses the mail or telephones to collect delinquent consumer accounts, (b) the principal purpose of its law practice is to collect debts, (c) it regularly files lawsuits to collect debts owed to another party, and (d) the debt was in default or Taherzadeh treated the debt as in default when acquired.

158.    Taherzadeh is a law firm that regularly collects consumer debts on behalf of third-party owners and creditors, including BBVA, through the use of the mails, telephones, and instrumentalities of interstate commerce.

159.    When BBVA acquired rights to the debt of Plaintiffs and other class members the debt was in default.

160.    From the time that it acquired rights to the debt of Plaintiffs and other class members, Taherzadeh was seeking to collect the debt on behalf of a third party, including BBVA.

**Violation of § 1692e(11)**

161.    In its attempts to collect a debt from Plaintiffs and other class members, Taherzadeh violated the FDCPA by sending an initial written communication and subsequent communication with language that overshadowed, obscured, and diminished the disclosure requirements of FDCPA § 1692e.

162.    Section 1692e of the FDCPA requires:

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C.A. § 1692e.

163.    In <u>Exhibits C and D</u>, Taherzadeh included language that violated the FDCPA.

164.    Taherzadeh added the following language to <u>Exhibit C and D</u> in bold, capital letters: "Legal precedent is not clear as to whether the sending of this letter makes us a debt collector. To the extent it does,..."

165.    As a law firm that regularly collects debts by filing lawsuits, Taherzadeh is a "debt collector" under the FDCPA and is required to provide § 1692e notices.

166.    The additional language was unnecessary, and overshadowed and contradicted the disclosure of Taherzadeh as a debt collector under § 1692e.

167.    The additional language would make the least sophisticated consumer uncertain as to whether Taherzadeh is a debt collector.

168.    The additional language did make Plaintiffs uncertain as to whether Taherzadeh was a debt collector.

## CLASS ALLEGATIONS

169.    Plaintiffs bring this COUNT V against Taherazeh on behalf of a class

pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

170.    The FDCPA class is defined as:

(1) All persons residing in the United States, who within one year
preceding the date of this complaint received a communication from
Taherzadeh that contained the following language:

LEGAL PRECEDENT IS NOT CLEAR AS TO WHETHER THE
SENDING OF THIS LETTER MAKES US A DEBT COLLECTOR. TO
THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN
ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF
YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN
BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL
PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO
COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR
RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU
PERSONALLY.

Plaintiffs anticipate the possibility of modifying the proposed class definitions,

including proposing subclasses where appropriate, after discovery about the scope

and breadth of Taherzadeh's debt collection program and will do so through either

an amended complaint, a motion for class certification pursuant to Fed. R. Civ. P.

23, or both.

171.    Excluded from the class are Defendants, any entity in which

Defendants have a controlling interest, each of their officers or legal

representatives, and any Judge assigned to this action, including his or their

immediate family.

172.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

### Numerosity/impracticality of joinder.

173.    On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from Taherazadeh's records or the records of third parties.

### Commonality and predominance.

174.    There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.  Whether Taherzadeh has a common policy of sending collection letters with language that overshadows, obstructs, or obscures the disclosure and validation notice requirements of FDCPA § 1692e, and

b.  Whether the Court should award damages to Plaintiffs and the other class members.

**Typicality of claims.**

175.   Plaintiffs' claims against Taherzadeh are typical of the claims of the other class members, because Plaintiffs and all class members were injured by the same wrongful practices. Taherzadeh had a policy of sending collection notices that contained language overshadowing or obscuring the requirement that Taherzadeh disclose that it is a debt collector in its initial communication and subsequent communications. Under the facts of this case, because the focus is upon Taherzadeh's conduct, if Plaintiffs prevail on their claims, then the other putative class members will prevail as well.

**Adequacy of representation.**

176.   Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class they seeks to represent. Plaintiffs, victims of unscrupulous debt collection practices, are committed to the vigorous prosecution of this action, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

**Prosecution of separate claims would yield inconsistent results.**

177.   Even though the questions of fact and law in this action are predominantly common to Plaintiffs and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for

Defendants to operate under if/when class members bring additional lawsuits concerning the same conduct under the contract and collection efforts.

### A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.

178.   A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the class would be proper. Plaintiffs envision no difficulty in the management of this action as a class action

179.   Plaintiffs and class members suffered statutory and actual damages proximately caused by BBVA's violations of the FDCPA.

180.   Taherzadeh is liable to Plaintiffs and the other class members for actual damages and statutory damages of up to the lesser of $500,000 or 1% of the net worth of BBVA. 15 U.S.C. § 1692k(a)(1)&(2)(B).

181.   The FDCPA is a strict liability statute and Taherzadeh is liable to Plaintiffs and the class members even if Taherzadeh's actions were negligent. 15 U.S.C. § 1692k.

182.    Even if Taherzadeh did not intend to injure Plaintiffs and the other

class members, did not intend to violate their privacy, or the privacy of third

parties, those facts are irrelevant because the FDCPA is a strict liability statute.

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.    Determining that this action is a proper class action under Fed. R. Civ.
      P. 23;

B.    Certifying Plaintiffs as class representatives;

C.    Appointing Plaintiff's counsel as class counsel;

D.    Adjudging and declaring that Defendant Taherzadeh violated 15
      U.S.C. § 1692e;

E.    Awarding Plaintiffs, and members of the proposed class, statutory
      damages;

F.    Awarding members of the proposed class actual damages, if any;

G.    Awarding Plaintiffs, and members of the proposed class, injunctive and
      declaratory relief;

H.    Awarding Plaintiffs, and members of the proposed class, reasonable
      attorneys' fees and costs incurred in this action;

I.    Awarding Plaintiffs, and members of the proposed class, any pre-
      judgment and post-judgment interest as may be allowed under the law;
      and

J.    Awarding other and further relief as this Court may deem just and
      proper.

## COUNT VI
### FAIR DEBT COLLECTION PRACTICES ACT
### Violation of 15 U.S.C. § 1692e(11)
### (Against Taherzadeh for Plaintiffs only)

183.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

### Violation of § 1692g

184.    Taherzadeh sent Exhibits C and D to Plaintiffs on October 11, 2017 and November 13, 2017, respectively.

185.    Exhibit C, sent on October 11, 2017, was Taherzadeh's initial communication to Plaintiffs.

186.    Exhibit D, sent on November 13, 2017 was Taherzadeh's second communication to Plaintiffs.

187.    Section 1692g(a) of the FDCPA requires:

(a) Notice of debt; contents
    Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
    (1) the amount of the debt;
    (2) the name of the creditor to whom the debt is owed;
    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the

37

consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g(a).

188.   <u>Exhibits C and D</u> do not contain the debt validation notice required by § 1692g of the FDCPA.

189.   <u>Exhibits C and D</u> do not notify Plaintiffs of their right to dispute the debt within 30 days under § 1692g of the FDCPA.

190.   Failure to include the § 1692g debt validation notice would mislead a least sophisticated consumer.

191.   Plaintiffs and class members suffered statutory and actual damages proximately caused by Taherzadeh's violations of the FDCPA.

192.   Taherzadeh is liable to Plaintiffs for actual damages and statutory damages of up to $1,000. 15 U.S.C. § 1692k(a)(1)&(2)(A).

193.   The FDCPA is a strict liability statute and Taherzadeh is liable to Plaintiffs even if Taherzadeh's actions were negligent. 15 U.S.C. § 1692k.

194.   Even if Taherzadeh did not intend to injure Plaintiffs, did not intend to violate their privacy, or the privacy of third parties, those facts are irrelevant because the FDCPA is a strict liability statute.

WHEREFORE, Plaintiffs, individually, pray for relief and judgment as follows:

A.   That the Court enter judgment in her favor and against Taherzadeh;

B.   Adjudging and declaring that Defendant Taherzadeh violated 15 U.S.C. § 1692e;

C.   That the Court award Plaintiff statutory and actual damages in an amount determined at trial;

D.   That the Court award Plaintiff costs and reasonable attorney fees under 15 U.S.C. §1692k;

E.   That the Court award any other relief this Honorable Court deems equitable and just; and

F.   That the Court award costs and such further relief as the Court may deem just and proper.

## PRESERVATION OF DOCUMENTS

195.   In this action, Plaintiffs intend to discover, include, and resolve the merits of claims about all correspondence sent by BBVA and Taherzadeh. Exhibits E & F, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

## TRIAL BY JURY

196.   Plaintiffs request a trial by jury.

Respectfully submitted,

DANIEL ANDRADE, SR. and
ELIZABETH M. ANDRADE,
individually and as the representatives
of a class of similarly-situated persons,

By:   /s/Tod A. Lewis

Amy E. Clark
State Bar No. 24043761
Amy Clark Law
11801 Domain Blvd., 3rd Floor
Austin, TX 78758
Telephone:  512-850-5290
Facsimile:  626-737-6030
amy@amyclarklaw.com

Phillip A. Bock (pro hac vice to be
requested)
Tod A. Lewis (Tx #24091999)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Ste. 1000
Chicago, IL  60602
Telephone:  312-658-5500
Facsimile:  312-658-5555
service@classlawyers.com

8308 Canola Bend
Austin, TX 78729-6464
512-739-0390